592 A.2d 131

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, as Rehabilitator of the Mutual Fire, Marine & Inland Insurance Company, Plaintiff,**

v.

**PHILADELPHIA MANUFACTURERS, Defendant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided May 30, 1991.

Reconsideration Denied June 28, 1991.

Joseph A. Eagan, Jr., Philadelphia, for plaintiff.

Stephen P. Chawaga, Philadelphia, for defendant.

Before CRAIG, President Judge, BYER, J., and CRUMLISH, Jr., Senior Judge.

## OPINION

CRUMLISH, Jr., Senior Judge.

Philadelphia Manufacturers Mutual Insurance Company (Philadelphia Manufacturers)[1] preliminarily objects to the complaint filed by Constance Foster, Insurance Commissioner of the Commonwealth, in her capacity as the statutory

---

1. Awkright Insurance Group is the successor in interest to Philadelphia Manufacturers. (complaint, paras. 2 and 3).

rehabilitator (Rehabilitator) of the Mutual Fire, Marine and Inland Insurance Company (Mutual Fire).[2]

Briefly stated, the Rehabilitator's complaint avers that Mutual Fire and Philadelphia Manufacturers entered into a series of facultative reinsurance and retrocession treaties, which Philadelphia Manufacturers breached in at least sixteen instances. (The breach of each treaty is set forth in a separate count.) Philadelphia Manufacturers' breaches lay either in failing to satisfy its obligation to assume liability for losses Mutual Fire incurred or failing to cede a certain percentage of reinsurance premiums due Mutual Fire under the treaties.

Philadelphia Manufacturers has filed preliminary objections raising a question of jurisdiction, Pa. R.C.P. No. 1017(b)(1); demurring to the complaint, Pa. R.C.P. No. 1017(b)(4); seeking a more specific pleading, Pa. R.C.P. No. 1017(b)(3); and seeking to strike scandalous and impertinent matter, Pa. R.C.P. No. 1017(b)(2).

First, Philadelphia Manufacturers by preliminary objection raises the question of this Court's jurisdiction. It avers that we lack jurisdiction because, in each of the agreements which are the subject of this complaint, the parties have contracted to settle all disputes by arbitration.[3]

■ There should be no doubt, however, that the presence of a contractual arbitration clause does not affect a

---

**2.** Under Section 516 of Article V of the Act of May 17, 1921, P.L. 789, *as amended,* added by the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.16, Commissioner Foster is authorized *to pursue all legal actions she deems appropriate against third parties.*

**3.** As the Rules of Civil Procedure and a wealth of authorities make plain, the presence of an arbitration clause is not a proper basis for a preliminary objection, *Vento v. Vento,* 256 Pa.Superior Ct. 91, 389 A.2d 615 (1978), but is to be pled as an affirmative defense in new matter. Pa. R.C.P. No. 1030; *Emmaus Municipal Authority v. Eltz,* 416 Pa. 123, 204 A.2d 926 (1964); *Teodori v. Penn Hills School District Authority,* 413 Pa. 127, 196 A.2d 306 (1964). Nonetheless, the Rehabilitator did not object to this procedure, but in her answer asserts only that this Court *has* jurisdiction. Accordingly, we will not overrule this preliminary objection but will address the question raised therein. *See County of Allegheny v. Dominijanni,* 109 Pa.Commonwealth Ct. 484, 531 A.2d 562 (1987).

court's jurisdiction. Our Supreme Court has consistently held that it does not. *Chester School Authority v. Aberthaw Construction*, 460 Pa. 343, 333 A.2d 758 (1975); *Borough of Ambridge Water Authority v. J.Z. Columbia*, 458 Pa. 546, 328 A.2d 498 (1974). "It is clear that an arbitration provision in a contract—irrespective of whether it is common law or statutory arbitration—does not affect the jurisdiction of the lower court." *University Square No. 1, Inc. v. Marhoefer*, 407 Pa. 257, 259, 180 A.2d 427, 429 (1962).

■ Rather, while a private agreement to arbitrate does not have the power to divest the court of jurisdiction, it is an election by the parties to select another forum to resolve disputes. It is binding on those parties. *Chester School Authority*.

The Rehabilitator attached to her complaint reinsurance and retrocessional treaties, which contain identical or similar arbitration clauses, one of which we set forth.

Any dispute or other matter in question arising between the Reinsured and any of the Reinsurers out of or relating to the interpretation, performance or breach of this Treaty, shall be settled by arbitration.

(complaint, Exhibit A).

■ Our Supreme Court in *Borough of Ambridge*, restated the law that "[c]ontracts that provide for arbitration are valid, enforceable and irrevocable, save upon grounds as exist in law or in equity for the revocation of any other type of contract." *Id.*, 458 Pa. at 352, 328 A.2d at 500. It concluded in *Waddell v. Shriber*, 465 Pa. 20, 348 A.2d 96 (1975), that when parties to a contract have included a broad arbitration provision, disputes arising from the contractual relationship must, when requested, be arbitrated. It would be difficult to contrive broader language than that contained in the treaties here. On the face of it, there is no reason that the breaches which the Rehabilitator alleges should not be subject to arbitration.

■ The Rehabilitator nonetheless maintains that because Mutual Fire is in rehabilitation, the arbitration provisions are abrogated. We cannot agree.

The Rehabilitator refers us to the authority in which the contractual right to arbitration has been denied in insurance insolvency proceedings. *Washburn v. Corcoran,* 643 F.Supp. 554 (S.D.N.Y.1986); *Corcoran v. Ardra Insurance Co.,* 77 N.Y.2d 225, 566 N.Y.S.2d 575, 567 N.E.2d 969 (1990). However, those cases were decided under the New York liquidation statute, which had been interpreted by that jurisdiction's highest court to have provided a comprehensive and exclusive statutory mechanism for resolving all disputes in the context of an insurance company receivership. *In the Matter of Allcity Insurance Co.,* 66 A.D.2d 531, 413 N.Y.S.2d 929 (1979). In contrast, our Supreme Court has never held that Article V of the Insurance Company Law requires this Court, expressly or by implication, to be the single forum in which all disputes must be resolved. *Grode v. The Mutual Fire Marine and Inland Insurance Co.,* 132 Pa.Commonwealth Ct. 196, 572 A.2d 798 (1990). In the absence of such authority, we are reluctant to divest parties of the opportunity to arbitrate, particularly when our Supreme Court has consistently favored contractual arbitration provisions and steadfastly held that they are to be enforced whenever possible.

■ Nor does the rehabilitation plan we approved require that the parties forego arbitration. Indeed, the plan contemplates that parties will submit to arbitration. Section VIII of the plan recognizes this Court's jurisdiction "to hear, determine and where appropriate refer to arbitration, all disputes concerning Claims and the collection of assets of Mutual Fire, including reinsurance and retrocessions;" and "to review decisions, actions, orders, or awards of arbitration panels...." Section X allows parties who would be bound by an arbitration clause, "absent these [r]ehabilitation proceedings" to petition the Court to resolve the dispute, which the Court in its discretion may grant.

The Rehabilitator asserts that she has, pursuant to Section X, in effect petitioned the Court to resolve the contractual disputes between Philadelphia Manufacturers and Mutual Fire by virtue of filing this complaint. We cannot agree with the argument that the Rehabilitator's complaint is tantamount to a Section X petition.

Presumably, a petition under Section X would require the Rehabilitator to make out a case that "resolution by the Court is in the best interest of the estate and will not unduly prejudice any party to the dispute." Any disputing party would then necessarily be given an opportunity to show that undue prejudice or harm to the estate would result from court intervention in lieu of arbitration. We simply cannot accept the suggestion that a civil complaint, with the full array of procedural and legal rights and obligations that automatically attach to it, is the same as a petition contemplated by Section X of the plan, requesting Court resolution of an arbitrable dispute.

As our Supreme Court has stated, contracting parties agree to arbitrate because it provides a faster, less formal, and less expensive decision making process than the courts can provide. *Waddell.* Although the presence of an arbitration clause does not divest a court of jurisdiction, that court should not extinguish the freely negotiated right of a party to arbitrate absent a compelling reason.

Accordingly, we will dismiss the Rehabilitator's complaint, refer this matter to arbitration and direct that each of the parties, within thirty days of the date of this order, select an arbitrator pursuant to the terms of the treaties attached as exhibits to the Rehabilitator's complaint. Because of our disposition here, we need not consider Philadelphia Manufacturers' remaining preliminary objections.

## ORDER

Now, this 30th day of May, 1991, the preliminary objections of defendant are sustained and the Rehabilitator's complaint is dismissed.

Plaintiff and Defendant shall each, within thirty (30) days of the date of this Order, appoint an arbitrator, pursuant to the terms of the agreements listed in Counts I through XVI of the complaint.

Plaintiff and Defendant shall each appoint a single arbitrator for all of said agreements and shall so advise this Court immediately upon the arbitrator's appointment.