**M. Diane KOKEN, Insurance Commissioner of the Commonwealth of Pennsylvania, Plaintiff,**

v.

**RELIANCE INSURANCE COMPANY, Defendant.**

**In re New Mexico Mutual Casualty Company and Southwest Casualty Company's Petition for Injunctive Relief and for Relief from Stay to Compel Arbitration.**

Commonwealth Court of Pennsylvania.

Decided March 22, 2004.

Publication Ordered April 5, 2004.

John C. Connell and Jerrold S. Kulback, Haddonfield, NJ, for New Mexico Mutual Casualty Co. and Southwest Casualty Company.

OPINION BY President Judge COLINS.

### OPINION and ORDER

Before the Court for its consideration is New Mexico Mutual Casualty Company (NMMCC) and Southwest Casualty Company's (SWCC) Petition for Injunctive Relief and for Relief from Stay to Compel Arbitration.[1] The pivotal issue for review is whether the Liquidator can be compelled to pursue arbitration as set forth in an insurance contract.

SWCC is a wholly owned subsidiary of NMMCC and was formed by NMMCC to allow NMMCC write higher risk insurance policies on a separate rate schedule. NMMCC and SWCC are parties to an Intercompany Treaty (Treaty) under which terms SWCC cedes and NMMCC reinsures one hundred percent of the busi-

---

1. By order dated January 12, 2004, the Court granted New Mexico's Petition to Intervene for the limited purpose of filing a petition seeking injunctive relief and for relief from stay and to compel arbitration.

ness written by SWCC. NMMCC and Reliance are parties to a reinsurance agreement (Agreement) which was effective for the period January 1, 1998 through December 31, 2001. Under its terms, Reliance cedes and NMMCC reinsurers one hundred percent of Reliance's ultimate net loss on each subject policy and one hundred percent of all allocated loss expenses arising in connection with claims arising from subject policies. NMMCC secured its obligation under the Agreement by providing Reliance with a Letter of Credit (LOC) on which Reliance is entitled to draw to reimburse Reliance for reinsured losses, which New Mexico fails to pay. NMMCC secured the letter of credit from Wells Fargo Bank in the amount of $1.4 million, naming Reliance as the beneficiary. Under the Treaty, NMMCC may exercise the right to offset any balance or balances due from one party to the other party. Further, the agreement memorializing the transaction contains an arbitration clause wherein the parties agreed that all disputes were to be submitted to arbitration.

Reliance and NMMCC and SWCC are also parties to reinsurance agreements for the years 1995 through 1997 (2nd Treaty). The terms set forth that NMMCC and SWCC shall cede and Reliance and Transatlantic Reinsurance Company shall reinsure 90% of NMMCC's and SWCC's net retained liability under all business reinsured under the treaty, and 90% of NMMCC's and SWCC's net position from its participation in the New Mexico Workers' Compensation Assigned Risk Pool. Under this treaty there is a right to off-set balances due from one party to the other. This treaty also contains an arbitration clause.

■ Reliance now seeks to draw down on the LOC and NMMCC alleges that it is entitled to offset any sums due Reliance under the NMMCC Treaty against those sums due under the 2nd Treaty. NMMCC seeks relief from the Court in the nature of an order compelling the Liquidator to submit this matter to arbitration. In support of its position that the arbitration clause divests this Court of jurisdiction, NMMCC draws the Court's attention to *Foster v. Philadelphia Manufacturers,* 140 Pa.Cmwlth. 186, 592 A.2d 131 (1991), *Cologne Reinsurance (Barbados), Ltd.,* 34 F.Supp.2d 240 (M.D.Pa.1999), and *Grode v. Mutual Fire, Marine & Inland Insurance Company,* 132 Pa.Cmwlth. 196, 572 A.2d 798 (1990). The Liquidator disagrees with that position, arguing that the statute rests exclusive jurisdiction to resolve issues related to the liquidation in Commonwealth Court. Further, the Liquidator asserts that pursuant to the October 3, 2001 order of this Court, no entity may sue Reliance without the Liquidator's consent. Finally, the Liquidator disputes NMMCC's interpretation of the holding in both *Philadelphia Manufacturers* and *Grode.*

In *Philadelphia Manufacturers* the Pennsylvania Insurance Commissioner, acting as the statutory rehabilitator of Mutual Fire, Marine and Inland Insurance Company (Mutual Fire), brought an action against Philadelphia Manufacturers alleging that it had breached several facultative reinsurance and retrocession treaties. Philadelphia Manufacturers filed preliminary objections on jurisdictional grounds, alleging that the matters should be submitted to arbitration pursuant to the contractual arbitration clause. The Commonwealth Court agreed, concluding that arbitration was binding upon the Rehabilitator and that she was compelled to arbitrate the alleged contractual dispute. Similarly, in *Cologne Reinsurance (Barbados),* the district court concluded that the inclusion of a broad arbitration clause in the coinsurance agreement rendered arbi-

tration the appropriate forum in which to resolve the dispute. NMMCC asserts that there is no distinction between both cases and the situation herein. However, in advancing that position, NMMCC fails to address three distinguishing points: first, in this matter the Insurance Commissioner is acting as Liquidator and not as Rehabilitator; second, the Court has entered an order declaring that no action may be brought against the Liquidator; and third, unlike *Philadelphia Manufacturers* and *Cologne,* herein the Liquidator was not the initiator of the suit.

Section 526(a) of the Insurance Act, 40 P.S. § 221.26(a), plainly states, "no action at law or equity shall be brought by or against the insurer, whether in this Commonwealth or elsewhere, nor shall any such existing action be continued after issuance of such [liquidation] order." Moreover, Paragraph 22 of this Court's order of liquidation of October 3, 2001 provides,

> Unless the Liquidator consents thereto in writing, no action at law or equity, or arbitration or mediation, shall be brought against Reliance or the Liquidator, whether in this Commonwealth or elsewhere, nor shall any such existing action be maintained or further prosecuted after the date of this Order. All actions, including arbitrations and mediations, currently pending against Reliance in the courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed. All actions, arbitrations and mediations, against Reliance or the Liquidator shall be submitted and considered as claims in the liquidation proceeding.

The October 3, 2001 order clearly advises that disputes will not be submitted to arbitration unless the Liquidator so agrees. That is the critical point herein. The Liquidator has not agreed to suit; the Liquidator has not initiated suit.

In so holding, there is no repudiation of the *Philadelphia Manufacturers* and *Cologne;* rather, the clarifying point is that consideration must be given to the party that initiates the lawsuit. When initiating the lawsuit, one submits to the jurisdiction of the Court in which the action is filed, and the mere filing of a suit automatically implicates any contractual agreement to pursue arbitration. Where such an agreement exists, agreement will be given primary consideration to determine the forum for continuation of the litigation. In both *Philadelphia Manufacturers* and *Cologne,* the Rehabilitator initiated the lawsuit. In initiating the lawsuit, the plaintiff must be bound by agreements to arbitrate unless grounds exist for the revocation of that agreement.

 Where, as here, a party to an agreement initiates an action against the Liquidator, and seeks to force the Liquidator to honor the contractual arbitration clause, the Liquidator may decline to do so asserting a compelling reason to revoke that contractual provision. This is consistent with the well-settled law that contracts that provide for arbitration are valid, enforceable, and irrevocable, save upon grounds as exist in law or in equity for the revocation of any other type of contract. *Borough of Ambridge Water Authority v. J.Z. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974). This position recognizes the equally settled principle that the mere presence of an arbitration clause does not divest a court of jurisdiction, and that the court should not extinguish the freely negotiated right of a party to arbitrate absent a compelling reason, *Waddell v. Shriber,* 465 Pa. 20, 348 A.2d 96 (1975).

*Sub judice,* we give primary consideration to the fact that the Liquidator seeks not to arbitrate a matter in a forum other than Pennsylvania, when the matter that will at most result in a judgment that must

then be submitted to the proof of claim process established in this liquidation proceeding. The Liquidator contends that this is a time-consuming and inefficient way to handle the affairs of the Estate. That point is most cogent. Reliance has now been in Liquidation for slightly more than 2 years. In those years, the Liquidator has made an ardent effort at marshalling assets and resolving disputes. The Court has put into place a mechanism that recommends that certain matters be submitted to Referees for resolution; that process has proven most effective. To remove this issue from this Court's jurisdiction for the net result of having a proof of claim submitted to the Estate, which conceivably could be subjected to further litigation, lays waste to the assets of the Estate. This procedure is consistent with *In Re:39 State Guaranty Associations' Petition to Strike the Liquidator's Petition to Declare that Deductible Reimbursements are General Assets of the Estate, Koken v. Reliance Insurance Company,* —— A.2d —— (Pa.Cmwlth.) (No. 269 M.D.2001, filed December 17, 2003), wherein it was determined that the language of paragraph 22 of the Order of October 3, 2001 "clearly prohibits the filing of an action against the Liquidator . . . ." *Id.* at 4.

■ In the petition for injunctive relief NMMCC seeks to prevent the Liquidator from drawing on the LOC. The Court rejects NMMCC's assertion that NMMCC and SWCC are essentially the same entity thereby creating a mutual debt or credit that implicates the set-off provisions of Section 532 of the Insurance Act, 40 P.S. § 221.32(a) (mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding . . . shall be set off and the balance only shall be allowed or paid). The Court also rejects that the two treaty's are to be read together, treated as one, and each

used to offset the debts and obligations owed under the other. Black letter law dictates that to constitute a mutual debt, the debt must be solely between the same parties and the contracts under the debt arise must be between the same parties. *Dickerson v. Dickersons Overseas Co.,* 369 Pa. 244, 249–50, 85 A.2d 102, 104–05 (1952) (not allowed where some parties to one contract were not parties to other contract).

*Sub judice,* NMMCC and SWCC, for business reasons that were convenient and prudent, were organized as separate companies, and entered into differing contractual relationships. While the companies do business together, have similar interests, and have a commonality in offices and corporate personnel, they are organized at law as independent business entities. As such, they cannot now be allowed to come in, and for purposes that are profitable to them, say that they are in fact one company, and that they had always intended to be treated as one company.

Whether the action be at law or in equity, whether a potential creditor can pierce the corporate veil between SWCC And NMMCC is of no moment because Reliance, the creditor, chooses not to, and the Court will not compel it do to do so. Herein, there are separate agreements that involve separate legal entities. Set-off is not available as there are not mutual demands, *i.e.,* reciprocal demands. Instead, through a circuitous route, NMMCC would have its obligation to Reliance reduced by the obligation owed by Reliance to SWCC. However, this is disallowed as 'the foundation of set-off is the prevention of circuity of action." *Hibert v. Lang,* 165 Pa. 439, 441, 30 A. 1004, 1005 (1895). The petition for injunctive relief is denied, and the Court enters the following order, and includes the Liquidator's gracious suggestion that the Court include in its order

provisions that would make NMMCC whole in the event of an erroneous or excess drawing down on the LOC.

Accordingly, the following order is entered:

## ORDER

**AND NOW,** this 22nd day of March 2004, upon consideration of NMMCC's petition for relief from stay and petition for injunctive relief, **IT IS HEREBY ORDER THAT**

1. NMMCC and SWCC's petition for injunctive relief is **DENIED;** further, the Liquidator must make NMMCC and SWCC whole should there be any erroneous or excess drawing down of the Line of Credit, together with statutory interest, and such funds shall be considered an administrative expense, which is the highest priority of creditor allowable under the Act.

2. NMMCC and SWCC's petition for relief from stay and to compel arbitration is **DENIED.**

The Liquidator shall serve a copy of this Order upon counsel for NMMCC, forthwith, and upon all those listed on the Master Service List on or before March 31, 2004.