## Condran, Appellant, *v.* Kennedy.

*Landlord and tenant—Termination of tenancy—Notice—Continuance from year to year—Cotenants.*

1. Where three cotenants, one owning a half interest, and the other two each a quarter interest, execute a lease in writing for a term of years to the two cotenants who own a quarter interest each, and three months before the end of the year following the last year of the term the person owning the one-half interest notifies the lessees that the rent for the ensuing year shall be for an increased amount stated, but the other terms and conditions of the lease shall remain as before, and the other parties do not assent to this notice, and rent for the first three months of the ensuing year is paid and accepted at the old rate, the increased rate stated in the notice cannot be collected for the remaining months of the year.

*Set-off—Cotenants—Contribution—Payment of mortgage interest.*

2. Where three cotenants execute a lease of the joint premises to two of the cotenants as partners, and a suit is brought for rent against the partners by the other cotenant, the defendants cannot set off against the claim for rent a payment of interest which the defendants had been compelled to make on a mortgage executed by all three of the cotenants, if it appears that the payment of interest was made after the suit for the rent had been begun. The rule which permits a surety to set up a cross demand after the impetration of the plaintiff's writ does not apply to such a case.

Argued Oct. 23, 1913. Appeal, No. 154, Oct. T., 1913, by plaintiff, from judgment of C. P. No. 1, Phila.

Co., June T., 1912, No. 1,106, on certificate for defendant in case of Edward F. Condron v. John D. Kennedy and Charles D. Kennedy, trading as Kennedy & Brothers. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Reversed.

Assumpsit for rent. Before Brégy, P. J.

The facts are stated in the opinion of the Superior Court.

Brégy, P. J., charged as follows:

[I will relieve you from trouble in this case. There seems to be no difficulty about the facts. Everybody who testified here has stated that they are true, that is, that during the year 1911, the Kennedys occupied the store and paid $150 rental per month to Mr. Condran, as a matter of fact, that being the exact sum they had paid under the five years' lease, that had expired, and it appeared that in 1912 they kept on sending $150 a month to Mr. Condran, except for the months of May and June, which are the ones concerning which this suit is now brought here. It is also true in September Mr. Condran notified the Kennedys that if they stayed after the first of January he would expect or require them to pay $200 a month. That notice in that way I charge you was ineffectual and had no force.] [3] The reasons for that, it is not necessary for me to go into now. [I charge you that the Kennedys had a right as long as they occupied the premises or were obliged to pay $150 a month for the balance of the year.] [4] It also appears that the Kennedys had paid $1,000 mortgage interest—which was $2,000, and that that $1,000 ought to have been paid by Mr. Condran. That is, they paid the additional $1,000 for Mr. Condran; but they owed him $300. In other words, Mr. Condran owed them $700 with interest and your verdict should be for the defendant for $700 with interest. You will render a verdict for the defendant for $700 with interest.

I will give an exception to my whole charge and an exception to the declination of the points presented. I charge you to render that verdict without giving the reasons for it. [I charge you that as a matter of law the defendants are entitled to a verdict for $700 with interest.] [5] To all I have said an exception can be taken to my whole charge; as also to my refusal of the points.

Certificate and judgment for defendants for $747.50. Plaintiff appealed.

*Errors assigned* among others were (3, 4, 5) above instructions quoting them.

*C. W. Vanartsdalen*, with him *W. H. Ramsay*, for appellant.—Each of the tenants in common was entitled to recover his proportion of the rent from the party in possession in an action in assumpsit: Reed v. Ward, 22 Pa. 144; Williams v. Ladew, 171 Pa. 369; Gilbert v. Price, 18 Pa. Superior Ct. 359.

The fact that all the owners agree for a certain period that two of the joint owners shall occupy the premises at a certain rental does not affect the right to recover the fair rental value after the expiration of such period. The acceptance of a portion of an amount due can never be held to create an accord and satisfaction, even where the amount due is in dispute, unless there is an agreement, express or implied, to accept the amount paid in full: Amsler v. McClure, 238 Pa. 409.

Where a tenant in common out of possession of the premises gives notice to the tenants in common in possession that if they continue to occupy the premises after the expiration of a certain period the rental will be at the rate of a certain sum and the two tenants in common in possession continue to occupy the premises after the expiration of the time named in such notice without objection and without any new agreement being entered into, there is an implied contract to pay the tenant in common, not in possession, his proportion of

the rental named in such notice: Southwest Coal Co. v. Warden, 1 Atl. Repr. 421.

A debt not due and not owned by the defendants at the time at the institution of the suit cannot be set off against plaintiff's claim: Roig v. Tim, 103 Pa. 115; Fleisher v. Blackburn, 15 Pa. Superior Ct. 289; Russ v. Sadler, 197 Pa. 51.

*Charles B. Joy*, with him *William K. Camblos*, for appellees:—Under the circumstances the learned president judge of the court below was clearly right in instructing the jury that the tenants were tenants from year to year and entitled to pay the same rent for the balance of the hold-over year: Phillips v. Monges, 4 Wharton, 226; Diller v. Roberts, 13 S. & R. 60; Muller's Est., 16 Phila. 321; Phœnixville Borough v. Walters, 147 Pa. 501; Hemphill v. Flynn, 2 Pa. 144; Williams v. Ladew, 171 Pa. 369.

Even if the notice had been valid in form it would not aid the appellant for the reason that it was not acted upon by the landlord or the tenants. Where a notice is not acted upon it is considered withdrawn: Fidelity Trust Co. v. Lee, 38 Pa. Superior Ct. 330; Haines v. Elfman, 235 Pa. 341.

The set-off was properly claimed: Craighead v. Schwartz, 219 Pa. 149; Hibert v. Lang, 165 Pa. 439; Thompson v. McClelland, 29 Pa. 475.

OPINION BY RICE, P. J., February 20, 1914:

The plaintiff and the defendants were owners, as tenants in common, of the premises in question, the plaintiff being the owner of an undivided one-half. All joined in a written lease of the premises to the defendants for the term of five years from January 1, 1906, at a rent of $2,400 for the first year, $3,000 for the second year, and $3,600 for each year thereafter, payable in monthly installments in advance. The defendants remained in occupancy after the expiration of the term

on December 31, 1910, and, for the year following, as well as the first three months of 1912, paid to the plaintiff one-half the stipulated rent, as they had done during the term. A question arose as to the rent for the month of April, which is not involved here. This action was brought to recover rent for May and June, 1912, it being averred in the statement of claim that $400 per month was the "fair and reasonable rental value" of the premises. The court refused to admit evidence offered on behalf of the plaintiff as to the rental value of the premises, and charged the jury that he was entitled to recover two months' rent at the rate specified in the written lease.

These rulings were undoubtedly correct unless the law as to the rights and liabilities of a holding-over tenant, after the landlord by acceptance of rent has elected to treat him as a tenant from year to year, was rendered inapplicable by the notice to which we shall presently refer: Phillips v. Monges, 4 Whart. 226; Hemphill v. Flynn, 2 Pa. 144. And as the rental value for 1912 was fixed by the act of the parties, the Act of June 24, 1895, P. L. 237, can be invoked no more successfully in support of the plaintiff's claim for a larger sum, than it could be during the term in support of a claim for a larger rent than that agreed to in the lease.

In September, 1911, the plaintiff notified the defendants by letter, "that" (quoting from the letter) "it is my intention as one of the lessors to change said terms and conditions" (of the lease) "in the following particulars, to wit: That from and after the expiration of your current term, to wit: December 31st, 1911, the rent of said premises will be charged at the rate of Forty-eight hundred dollars ($4,800) per annum for the term of one year from January 1st, 1912, payable in portions of four hundred dollars ($400) monthly on the 1st day of each month. The first . . . . monthly payment thereof to be made the first day of January, 1912, and in all other particulars the terms and conditions

of said lease to remain as they now are." Certainly, this letter did not change the terms and conditions of the lease. Nor can it be regarded as a notice to quit; it does not purport to be that. It was a mere declaration of intention by one of the owners, which was not expressly concurred in by either of the others, and was ineffective without their concurrence. Any inference of their assent, which might otherwise have been drawn, is conclusively repelled by the payment and acceptance of rent for the first three months of 1912 in accordance with the terms of the lease.

The subject of the fifth assignment of error is the instruction of the learned trial judge: "I charge you that as a matter of law the defendants are entitled to a verdict for seven hundred dollars with interest." Inasmuch as the plaintiff's counsel stated, at the opening of the defendants' case, that he objected to the sufficiency of the notice of special matter to entitle the defendants to a certificate in their favor, we cannot agree that he is estopped to file the assignment of error under consideration. It is undisputed that the three owners had given a mortgage on the premises and that $2,000 interest thereon had fallen due before the institution of this suit. The defendants asked the plaintiff by letter to send his check for $1,000. Receiving no answer to their letter, they paid the entire interest and sought to set off $1,000 in the present action, but this payment was not made until after the action was brought. It is thus seen that the assignment of error raises the question, whether the defendants were entitled to the set-off and were also entitled to verdict and judgment in their favor for the excess over the rent for which they were liable in this action.

Since set-off is in substance a cross action, a cross demand alleged by way of set-off must have been ripe for action at the impetration of the writ, and it is not sufficient that it became so before the trial of the cause. Unquestionably this is the general rule: Pennell v.

Grubb, 13 Pa. 552; Roig v. Tim, 103 Pa. 115; Gunnis v. Cluff, 111 Pa. 512, and cases cited on p. 515; Hotchkiss v. Roehm, 181 Pa. 65, 74; Russ v. Sadler, 197 Pa. 51; Pocono Ice Co. v. American Ice Co., 214 Pa. 640, 646; Riley v. Eigo, 1 Pa. Superior Ct. 139. But what is sometimes spoken of as an exception to the general rule in favor of a surety, is recognized in many decisions. This exception, if so it may be called, is founded on the equitable principle, that as soon as a surety's obligation to pay becomes absolute he is entitled in equity to require the debtor to exonerate him, and he may file a bill to compel exoneration although the creditor has not demanded payment from him: Bispham's Eq., 7th ed., sec. 331; Beaver v. Beaver, 23 Pa. 167. Equity is part of the law of Pennsylvania and is administered through common-law forms; for the greater period of her history could only be so administered. The vesting of separate equity jurisdiction in the courts has not changed the law in this respect. "Hence on a bond or covenant to indemnify against claims the obligee is entitled to sue as soon as a claim is made and need not wait until judgment is recovered against him or even until an action is commenced:" Ardesco Oil Co. v. N. A. Mining & Oil Co., 66 Pa. 375; Smith v. Harry, 91 Pa. 119. In recognition of this equitable principle, it has been held that a defendant may set off the amount of a judgment against him as surety of the legal plaintiff, who was insolvent, although he did not pay the judgment until after suit brought: Thompson v. McClelland, 29 Pa. 475. The rule in favor of sureties has been applied to the case of an accommodation indorser who pays the note. In an action against him by the maker of the note, on an independent demand, he is entitled to set off the amount so paid, although not paid until after the maker's suit against him was commenced, upon the ground that his right of set-off, as against any claim the maker had against him, originated when the note was protested and his liability as indorser be-

came fixed and absolute: Miller v. Kreiter, 76 Pa. 78. These cases were cited and followed in Craighead v. Swartz, 219 Pa. 149, which also rests on the rule in favor of sureties. It was held in Hibert v. Lang, 165 Pa. 439, reversing the court below and distinguishing the case of Henderson v. Lewis, 9 S. & R. 379, that one of two sureties in a bond, who is sued on the bond, may, with the consent of his cosurety, set off a judgment in favor of the latter against the plaintiff. This extended reference to the exception to the general rule, which is made in favor of sureties, is important only as showing that it rests on principles which are not applicable here, at least not to the full extent. There, the right of the surety to set off against the independent demand of his principal the debt of the principal for which he was surety, resulted not from the surety's payment of the debt, but from the fact that his liability and the duty of the principal to exonerate him became fixed and absolute before the commencement of the action by the principal against him. Here, at the time this action was commenced the three owners in common stood on an equality so far as liability for the mortgage interest was concerned. The equity of contribution arises when one of several parties who are liable to a common debt or obligation discharges the same for the benefit of all: Bispham's Eq., 7th ed., sec. 328. This equity, differing from the equity of exoneration, in favor of a surety, which was enforced in the cases cited, did not arise in the present case until after the defendants paid the mortgage interest, and, therefore, did not exist at the time the action was commenced. The case is not distinguishable in principle from Garrison v. Paul, 1 Penny. 380. There, the defendant in an action of debt offered to prove that plaintiff and defendant were both sureties for a third party in a note upon which judgment was entered before the present suit was instituted, that since the present suit was commenced there had been a levy and sale of defendant's

goods under the said judgment, and that both plaintiff and the principal were insolvent at the time of the trial. This offer was rejected by the trial court, and, on writ of error, the ruling was affirmed. Judging from the briefs of counsel for the plaintiff in error, which are summarized in the report of the case, the doctrine of equitable set-off was learnedly and vigorously pressed upon the attention of the court, and, in addition, much was made of the fact, which does not appear here, that the plaintiff was insolvent. The reply was made, that there is an obvious distinction between the rights of a surety as against his principal and the right of a surety against his cosurety, and that a surety is without remedy against his cosurety until he has paid more than his share of the debt. The latter position was sustained by the court in the following opinion, which clearly indicates that the question was fully before the court: "It is certainly well-settled law that a defendant's right to a set-off must be perfect at the time the suit is instituted. We know of no doctrine of equitable set-off which dispenses with this rule. A surety has an action against his principal before being actually compelled to pay the money, because he could file a bill in equity for indemnity. But there can be no action for contribution between cosureties, either at law or in equity, until the surety is obliged to pay the debt." It cannot be contended that the right of one principal to contribution from his coprincipal stands on higher ground. We conclude that the fifth assignment of error must be sustained, and, in view of the state of the record, we can see no way in which the error can be corrected except by sending the case back for a new trial.

All of the other assignments of error are overruled.

The judgment is reversed and a venire facias de novo awarded.